IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

      Plaintiff,

v.

2024 YAMAHA MOTORCYCLE
MT-09, VIN: JYARN94E9RA002075,

AND

$4,984.00 IN U.S. CURRENCY,

      Defendants.

Case No.:  26-CV-489

---

VERIFIED COMPLAINT IN REM

---

Plaintiff, United States of America, by its attorneys, Chadwick M. Elgersma, United States Attorney for the Western District of Wisconsin, and by Heidi L. Luehring, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.  The allegations in this Complaint are supported by a declaration from Scott Peterson, Investigator at the Wausau Police Department, in a special assignment and work as a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) as part of the Central Wisconsin Narcotics Task Force (CWNTF).

1.      This is a civil action *in rem* brought to enforce the provision of 21 U.S.C. § 881(a)(6) for the forfeiture of all moneys furnished or intended to be furnished in

exchange for a controlled substance, all proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*

2.      The defendant property consists of a 2024 Yamaha motorcycle, Model MT-09, VIN JYARN94E9RA002075 and $4,984.00 in U.S. currency. Both items were seized on November 12, 2025, in Weston, Wisconsin (defendant properties).

3.      Plaintiff brings this action *in rem* to forfeit and condemn the defendant properties. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4.      This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b).  Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem,* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5.      The defendant properties are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; 2) proceeds traceable to such an exchange; and 3) money, negotiable instruments, and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

6.      In May 2025, the CWNTF opened an investigation into Mark Wortham and his potential associates for distributing illegal narcotics in the Wausau, Wisconsin area. Wortham has a criminal history involving drug trafficking from 2007 to present.[1]

7.      A confidential informant (CI-1) shared information about Wortham selling large quantities of cocaine, methamphetamine, and using U.S. currency or CashApp for payment.

8.      CI-I paid Wortham on CashApp at the account $04JoshM to a Joshua Mireles. A review of CI-1's account history shows approximately 64 transactions for a total of $17,334.00 in payments to that account.

9.      C-1 believed payments for narcotics made to the Joshua Mireles account occurred from approximately December 2024 to May 2025.

10.     Joshua Mireles is believed to be the nephew of Mark Wortham. Mireles resides a Wortham's residence located at 3304 Tappe Drive, Weston, WI. Mireles has been seen at the residence during this investigation at various times of he day, coming and going during surveillance operations.  Marathon County in house records also show that Mireles resides at 3304 Tappe Drive.

---

[1] Wortham's criminal history includes previous state convictions for possession with intent to deliver cocaine over 40 grams in 2007, and possession with intent to deliver cocaine over 100 grams in 2009. Wisconsin Department of Correction (DOC) records indicate Wortham is currently on parole for possession with intent to deliver cocaine over 40 grams. On August 21, 2025, Wortham pled no contest in an open criminal case for state felony charges. arising out of conduct in 2021, specifically possession with intent to deliver heroin over 50 grams as a second or subsequent offense and felon in possession of a firearm.

11. The most recent payment from CI-1 via the CashApp account was on May 13, 2025, for $200 with a note of "gambling." CI-1 confirmed the word gambling was a cover-up term for drug purchases, as CashApp requires a description or reason for the payment.

12. CI-1 agreed to cooperate with controlled buys of controlled substances from Wortham.

13. CI-1 has pending state drug charges for which CI-1 is seeking leniency and may additionally be seeking financial compensation, but no payments or promises for payment have been made to CI-1. CI-1 does not have any prior felony convictions but has prior misdemeanor convictions.[2]

14. CI-1 and Wortham had a close relationship before CI-1 became an informant.

15. During CI-1's cooperation, phone tolls indicated regular independent contact between CI-1 and Wortham, and agents observed CI-1 at Wortham's residence outside of law enforcement's direction.

16. CI-1 said Wortham's phone number is XXX-XXX-XXXX and communicated with Wortham via phone calls and text messages at that number.

---

[2] CI-1 has misdemeanor criminal convictions including trespassing and disorderly conduct. CI-1 has pending criminal charges including possession with intent to deliver cocaine, possession with intent to deliver methamphetamine, maintaining a drug trafficking place, possession of psilocybin, possession of drug paraphernalia, and possession of an illegally obtained prescription.

17. CI-1 showed agents the number saved under the contact "BigHomie" in their phone, and law enforcement and cell service records revealed that number was registered to Wortham.

18. CI-1 also said CI-1 believes Wortham resides at 3304 Tappe Drive, Weston, Wisconsin ("Wortham's residence"), based on previously purchased drugs from Wortham there.

19. Wisconsin Department of Transportation (DOT) records, DOC records, and law enforcement databases list Wortham's address as 3304 Tappe Dr, Weston, Wisconsin.

20. CI-1 said Wortham typically sells cocaine and believes Wortham's source of cocaine supply was in Chicago.

21. CI-1 said CI-1 has frequently purchased 1-2 ounces of cocaine from Wortham every 1-2 days for the last four to five months beginning in October 2024.

22. Wortham charged CI-1 approximately $1,200-$1,300 per ounce of cocaine.

23. CI-1 also purchased methamphetamine from Wortham and would periodically purchase 1-2 ounces of methamphetamine at a time as needed.

24. According to CI-1, supply was never an issue and Wortham was always able to meet requests for methamphetamine.

25. Wortham charged approximately $400 per ounce of methamphetamine. Wortham also asked CI-1 for a pound of heroin, so CI-1 suspects Wortham also sells heroin.

## Wortham Sold Drugs in Controlled Buy #1

26. On May 29th, 2025, CI-1 participated in a controlled buy.

27. The day before, CI-1 contacted Wortham at XXX-XXX-XXXX to discuss obtaining two ounces of cocaine from Wortham at an agreed upon location in a business parking lot in Wausau, Wisconsin.

28. The cocaine was going to be fronted by Wortham to CI-1 with an agreement that CI-1 would later pay Wortham $2,400 for the cocaine.

29. CI-1 was provided with $500 of prerecorded U.S. currency to cover a previous debt owed from a previous front of cocaine.

30. While under surveillance, CI-1 traveled directly to the meet location. Upon arriving at meet location, CI-1 briefly entered Wortham's vehicle.

31. CI-1 gave Wortham the $500 of prerecorded U.S. currency for a past cocaine debt, and CI-1 obtained two ounces of suspected cocaine in a clear plastic bag.

32. Following the transaction, surveillance observed CI-1 travel directly to meet with law enforcement.

33. CI-1 said Wortham gave the suspected cocaine to CI-1, and said Wortham was the only person in the vehicle.

34. At the Marathon County Sheriff's Office, the substance was tested utilizing the TruNarc analyzer and it tested positive for cocaine.

35. The total weight of the cocaine in its packaging was 58 grams.

6

## Wortham Sold Drugs in Controlled Buy #2

36.     On June 17, 2025, CI-1 participated in another controlled buy.

37.     CI-1 contacted Wortham at XXX-XXX-XXXX and arranged the purchase of two ounces of methamphetamine for a total price of $800 ($400/ounce) at the same parking lot as the first controlled buy.

38.     CI-1 was provided with $2,700 of prerecorded U.S. currency to pay for the first controlled buy's drugs and to settle the last remaining cocaine debt between them.

39.     While under surveillance, CI-1 traveled directly to the meet location.

40.     Upon arriving at the meet location, CI-1 briefly entered Wortham's vehicle and gave Wortham the $2,700 of prerecorded U.S. currency and obtained two ounces of methamphetamine packaged in two one-ounce plastic bags.

41.     Following the transaction, surveillance observed CI-1 travel directly to meet with law enforcement.

42.     CI-1 said Wortham gave the suspected methamphetamine to CI-1.

43.     CI-1 said Wortham was the only person in the vehicle.

44.     At the Marathon County Sheriff's Office, the substance was tested utilizing the TruNarc analyzer and it tested positive for methamphetamine.

45.     The total weight of the methamphetamine in its packaging was 57.5 grams.

## Wortham Sold Drugs in Controlled Buy #3

46.     On July 17, 2025, CI-1 participated in another controlled buy.

47.    During the week before this controlled buy, CI-1 contacted Wortham at XXX-XXX-XXXX to discuss the purchase of one pound of methamphetamine and to discuss the price and timing.

48.    On the day of the transaction, Wortham instructed CI-1 to meet him at his house to fulfill half of CI-1's order – eight ounces of methamphetamine for $3,200.

49.    CI-1 was provided with $3,200 of prerecorded U.S. currency.

50.    While under surveillance, CI-1 traveled directly to Wortham's residence.

51.    As CI-1 arrived, Wortham also arrived on the 2024 Yamaha Motorcycle MT-09, VIN: JYARN94E9RA002075 (2024 Yamaha) and they both entered the house.

52.    CI-1 purchased eight ounces of methamphetamine from Wortham packaged in individual one-ounce plastic bags in exchange for $3,200.

53.    CI-1 left Wortham's residence and traveled directly to meet with law enforcement.

54.    At the Marathon County Sheriff's Office, the substance was tested utilizing the TruNarc analyzer and it tested positive for methamphetamine.

55.    The total weight of the methamphetamine in its packaging was 234 grams.

### Wortham Sold Drugs in Controlled Buy #4

56.    On August 6, 2025, CI-1 participated in another controlled buy of methamphetamine.

57.    Wortham contacted CI-1 and Wortham stated that the other half of the originally requested full pound was available.

8

58.     Wortham also told CI-1 that he had a full pound of methamphetamine for $5,000 available if CI-1 wanted it.

59.     CI-1 was provided with $3,800 in prerecorded U.S. currency to pay for most of the drug transaction.

60.     While under surveillance, CI-1 traveled directly to Wortham's residence.

61.     Inside, CI-1 purchased one pound of methamphetamine packaged in individual two separate plastic bags in exchange for $3,800 and an agreement to pay the remaining $1,200 later.

62.     While CI-1 was inside Wortham's residence for this controlled buy, surveillance units observed a female arrive to the house in a Lincoln Town Car with Wisconsin registration ATZ4203.

63.     Upon review of a photograph of the arriving female captured by surveillance units, agents recognized her as Lindsay Adams from past drug-related law enforcement contacts involving the same vehicle.

64.     Inside, CI-1 observed Wortham give Adams what appeared to be approximately two ounces of suspected methamphetamine in front of CI-1.

65.     In addition to the two ounces for Adams, CI-1 observed Wortham return from a bedroom with a bag of suspected methamphetamine that appeared to be larger than the pound CI-1 just received.

66.     Following the transaction, surveillance observed CI-1 travel directly to meet with law enforcement.

9

67. At the Marathon County Sheriff's Office, the substance was tested utilizing the TruNarc analyzer and it tested positive for methamphetamine.

68. The total weight of the methamphetamine in its packaging was 465.5 grams.

69. Several weeks later on August 26, 2025, CI-1 met Wortham in Wortham's vehicle, while under surveillance, to pay the remaining $1,200 in prerecorded U.S. currency to complete this controlled buy's payment.

**Wortham Sold Drugs in Controlled Buy #5**

70. On November 4, 2025, the same day Wortham returned from a trip to Chicago, CI-1 participated in another controlled buy.

71. CI-1 contacted Wortham at XXX-XXX-XXXX to discuss the purchase of one ounce of methamphetamine for $400 at Wortham's residence.

72. CI-1 was provided with $400 of prerecorded U.S. currency.

73. While under surveillance, CI-1 traveled directly to Wortham's residence.

74. Inside, CI-1 purchased two ounces of methamphetamine packaged in individual one-ounce plastic bags in exchange for $400.

75. Wortham told CI-1 he was offering two ounces of methamphetamine for $500, and Wortham said CI-1 could pay the remaining $100 later.

76. Due to a construction worker being present in the home, Wortham led CI-1 to what is believed to be his bedroom for the transaction, which was the same one CI-

1 observed Wortham emerge from with drugs for Adams during the preceding controlled buy.

77.    Upon entering the bedroom, CI-1 observed a safe on the floor.

78.    Following the transaction, surveillance observed CI-1 travel directly to meet with law enforcement.

79.    At the Marathon County Sheriff's Office, the substance was tested utilizing the TruNarc analyzer and it tested positive for methamphetamine.

80.    The total weight of the methamphetamine in its packaging was 57 grams.

## Search Warrant

81.    On November 12, 2025, law enforcement executed a federal search warrant on Wortham's residence.

82.    In a bedroom, agents located a safe that opened using a key on the key ring and found $5,084 in U.S. currency[3] and documents attributed to Wortham, including his birth certificate.

83.    In a dresser in the same bedroom, agents also located multiple packages containing over six ounces of suspected cocaine, an ounce of methamphetamine, and approximately five grams suspected fentanyl, in addition to packaging material containing suspected cocaine residue.

---

[3] This includes $100 in pre-recorded buy money.

11

84.    In the kitchen, agents located a digital scale.

## Bank Account and CashApp

85.    A review of Joshua Mireles CashApp records shows a transfer of $3,198 with fee of $55.96, on May 24, 2025, from Mireles's CashApp to Mireles's CoVantage Credit Union checking account.

86.    The checking account shows a deposit of $3,142.04.[4]

87.    Also on May 24, 2025, Mireles's CoVantage Credit Union checking account shows a $3,872.00 cash withdrawal at 9:45 a.m.

88.    At approximately 9:46 a.m., Wortham deposits $2,700 in cash into his CoVantage Credit Union checking account.

89.    Mireles was transferred proceeds of drug trafficking from his CashApp account to Wortham.

90.    A review of Mark Wortham's CoVantage Credit Union checking account shows that on May 14, 2025, the account had a balance of $277.54.

91.    There are cash deposits into Mark Wortham's CoVantage Credit Union checking account of $835.00 on May 15, 2025, $4,000 on May 20, 2025, $1,640.00 on May 22, 2025, $2,700.00 on May 24, 2025, and $400 on May 24, 2025.

---

[4] $3,198.00 – 55.96 fee = $3,142.04 deposit

92. On May 24, 2025, check number: 2677640, in the amount of $8,000.00 is issued from Mark Wortham's CoVantage Credit Union checking account, payable to Antigo Yamaha, Inc..

93. After the withdrawal, the balance remaining in Mark Wortham's CoVantage Credit Union checking account was $1,048.96.

94. There are no other deposits into Mark Wortham's CoVantage Credit Union checking account from May 14, 2025 through May 24, 2025, other than the cash deposits.

95. Proceeds of drug trafficking were deposited into Mark Wortham's CoVantage Credit Union checking account to cover the check issued to Antigo Yamaha, Inc.

**2024 Yamaha Motorcycle MT-09, VIN: JYARN94E9RA002075 (2024 Yamaha)**

96. On or about May 24, 2025, Wortham purchased a 2024 Yamaha motorcycle, Model MT-09, VIN JYARN94E9RA002075.

97. The purchase agreement is marked "Pd c/c #2677640 $8000 $3187.11 cash."

98. The purchase agreement also shows that $500 was paid as a down payment.

99. The total cost of the motorcycle was $11,687.11.

100.    The downpayment, check number: 2677640, in the amount of $8,000.00 payable to Antigo Yamaha, Inc., and the additional $3,187.11 in cash, all represent proceeds of drug trafficking.

101.    Any additional facts and circumstances supporting the seizure of the defendant properties are contained within the attached declaration and incorporated herein this complaint.

WHEREFORE, the United States of America prays:

(1)    that process of warrant be issued for the arrest of the defendant property;

(2)    that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

(3)    that judgment be entered ordering the property forfeited to the United States of America for disposition according to law; and

(4)    that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted this 27th day of May 2026.

CHADWICK M. ELGERSMA
United States Attorney

By:    */s/ Heidi L. Luehring*
HEIDI L. LUEHRING
Assistant U. S. Attorney
222 W. Washington Avenue
Suite 700
Madison, Wisconsin 53703